UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANGELO FALCONE, RICK MALLETTE,
JAMES KOPPEL, PATRICIA SCHNEIDER

                 Plaintiffs,      **MEMORANDUM OF**
                                        **DECISION AND ORDER**
                                        08CV1606 (ADS)(ETB)

   -against-

MARINEMAX, INC.,
MARINEMAX EAST, INC.,
MARINEMAX NORTHEAST, LLC,
MARINEMAX SERVICES, INC., and
SURFSIDE 3 YACHT CLUBS LLC.,

                Defendants and
                Third-Party Plaintiffs,
   -against-

MARINCO ELECTRICAL GROUP,
SEACOAST DISTRIBUTORS LLC.,

                Third-Party Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**RUBIN, FIORELLA & FRIEDMAN LLP**
Attorneys for the Plaintiffs
292 Madison Avenue, 11th Floor
New York, NY 10017
       By:   Brendan M. Burke , Jr., Esq.,
                James Edward Mercante, Esq.,
                Patrick Corbett, Esq.,
                Michael Evan Stern, Esq., Of Counsel

**HILL BETTS & NASH LLP**
Attorneys for the MarineMax Defendants
One World Financial Center, 26th Floor
New York, NY 10281
    By:    James Edward Forde, Esq., Of Counsel

**PATTERSON, BELKNAP, WEBB & TYLER LLP**
Attorneys for Third-Party Defendant Marinco Electrical Group
1133 Avenue of the Americas
New York, NY 10036-6710
    By:    Robert D. Wilson , Jr., Esq., Of Counsel

**CASCONE & KLUEPFEL, LLP**
Attorneys for Third-Party Defendant Seacoast Distributors LLC
1399 Franklin Avenue, Suite 302
Garden City, NY 11530
    By:    David F. Kluepfel, Esq., Of Counsel

**NO APPEARANCE**
Surfside 3 Yacht Clubs, LLC.

**SPATT, District J.**

This action arises out of a fire at the defendants' marina in Lindenhurst, New York on May 9, 2007, which caused varying degrees of damage to the plaintiffs' boats. Presently before the Court is the MarineMax defendants' motion for partial summary judgment. For the following reasons, the motion is denied.

### I. BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 statements and their submissions on the motion.

Surfside 3 MarineMax, the business name used by the defendants MarineMax Inc., MarineMax East, Inc., MarineMax Northeast LLC, MarineMax

Services, Inc., (collectively "the MarineMax defendants") at their Lindenhurst location, provides marines services, including storage, maintenance, and launching of vessels. The plaintiffs were each owners of boats, which were lawfully on the premises of Surfside 3 MarineMax at the time of the fire. The cause of the fire is as yet undetermined. Nevertheless, the moving defendants assert that three of the plaintiffs, Rick Mallette, James Koppel, and Patricia Schneider executed identical "2006 Winter Storage Program" contracts, which included an exculpatory clause, providing that:

> It is understood and agreed by owner that Surfside 3 MarineMax is not responsible or liable for any loss through fire, theft, malicious mischief, personal injury, property damage, vandalism or loss of personal property and equipment whatsoever, and does not carry insurance to cover same, and the lessee agrees to waive his rights of subrogation against SS3 MarineMax.

(Defs. Exh. A, B, and C, at ¶ 3). The MarineMax defendants contend that they executed the contracts and tendered performance according to its terms, repairing and storing the plaintiffs' boats.

In addition, the MarineMax defendants contends that on July 3, 2007, plaintiff Mallette signed a "General Release and Agreement in Settlement of All Claims with MarineMax" (the "Release"). The Release provides that Mallette and "MarineMax of New York, Inc." reached an agreement to resolve any and all issues regarding the fire on May 9, 2007 and the damage of Mallette's vessel arising from the fire. The Release further provides that Mallette agrees to hold

harmless "MarineMax" and "MarineMax Inc." from any and all claims with respect to damage to his vessel arising from the fire. (Defs. Exh. D). The MarineMax defendants contend that in exchange for this Release, they sold Mallette a brand new boat based on the market price with a 20% discount.

With respect to the somewhat confusing corporate structure of MarineMax, the defendants state that MarineMax Inc. is a Delaware limited liability company and is the parent company of a wholly owned subsidiary, MarineMax East, Inc. In turn, MarineMax East Inc. wholly owns MarineMax Northeast LLC, a Delaware limited liability company doing business in New York at 692 South Wellwood Avenue, Village of Lindenhurst, in the Town of Babylon. The defendants contend that MarineMax Inc., MarineMax East Inc., MarineMax NorthEast Inc., and MarineMax Services Inc. are doing business as Surfside 3 MarineMax.

Invoking the Court's admiralty and supplemental jurisdiction, *see Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*., 239 F. Supp. 2d 316, 319 (E.D.N.Y. 2003), *reconsideration den'd* 289 F. Supp. 2d 337 (E.D.N.Y. 2003); *Omaha Indem. Co. v. Whaleneck Harbor Marina, Inc.*, 610 F. Supp. 154 (E.D.N.Y. 1985), this action was filed by plaintiff Mallette on April 18, 2008, and consolidated with three related actions on October 10, 2008. The MarineMax defendants contend that the Winter Storage Program agreement and the Release

are valid and enforceable, and therefore, they are entitled to summary judgment against Mallette, Koppel, and Schneider. The defendants made the present motion for summary judgment on December 4, 2008. Discovery in this case has not been certified as complete.

## II. DISCUSSION

*A.    As to the defendants' motion for partial summary judgment*

Summary judgment is proper only where no genuine issue of material fact exists to present to the trier of fact. Rule 56 of the Federal Rules of Civil Procedure states:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

As stated by the Rule, a motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party has offered evidence that no genuine issue of material fact remains, the burden shifts

to the non-moving party to provide evidence that a genuine, triable issue remains. *Id.* at 250.  It is well-settled that the non-moving party cannot defeat summary judgment with only unsupported assertions or the allegations in its pleadings. Fed. R. Civ. P. 56(e); *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50; 106 S. Ct. 2505, 91 L. Ed. 2d 202 (citations omitted).

Still, in deciding a motion for summary judgment, the Court must view all of the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202; *Vann v. City of N.Y.*, 72 F.3d 1040, 1048–49 (2d Cir. 1995).  Notably, "the trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see Donahue v. Windsor Locks Board of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987) (holding that on a motion for summary judgment, the court

"cannot try issues of fact; it can only determine whether there are issues to be tried").

   1.   **As to the Exculpatory Clause**

The plaintiffs resist the defendants' motion premised on the exculpatory clause found in the Winter Storage Program contracts on three grounds. First, the plaintiffs contend that the Winter Storage contract was no longer in force because their boats had been launched and were in the water, berthed in service slips at the service dock, at the time of the fire. The plaintiffs rely on ¶ 6 of the contract, which provides that "All winter storage boats not contracted for summer dockage must be removed from the premises within five (5) days after launching date or will be billed at $15.00 per day." (Defs. Exh. A, B, and C, at ¶ 6).

The defendants counter that this provision does not indicate in any way the end of the contract, but simply imposes a duty and a timeline by which owners must pick up their boats. In addition, the defendants contend that it is ¶ 2 of the contract that sets the time frame when the Winter Storage Program ends and the Summer Dockage Program begins. Paragraph 2 provides that: "Boats left on the premises after Memorial Day will be subject to a summer storage charge, at the rate of $15.00 per foot per month. This is to be strictly enforced." (Defs. Exh. A, B, and C, at ¶ 2). However, the Court finds that neither paragraph sets forth a

clear and unambiguous termination date. In fact, no clear term of duration is found anywhere in the "Winter Storage Program" agreement.

The Court notes that the plaintiffs' position is inconsistent with their breach of contract claims arising from the same agreement. However, this position is not inconsistent with the plaintiffs' negligence and breach of bailment claims. The Court finds that the contract provides no clear termination date for "winter storage," and thus, questions of fact arise as to the contemplation of the parties and the custom and usage in the industry regarding winter storage agreements. Discovery on this issue is warranted.

The second ground that the plaintiffs raise in opposition to the motion is that the defendants fail to establish privity regarding the "Winter Storage Program" agreements because the agreement identifies only "Surfside 3 MarineMax" and "SS3 MarineMax" and yet no governmental "doing business as" ("DBA") filing, or other reliable evidence of DBA status, has been produced with respect to the named MarineMax defendants.

The defendants explain that on March 30, 2006, MarineMax Inc. Acquired Surfside 3 Marina, Inc. (Pls. Exh. E, at 42). The defendants contend that it is logical that "Surfside 3" would appear on the face of the contracts, and the name "Surfside 3 MarineMax" represents the combined name of the former and current owners of the marina.

The Court rejects the plaintiffs' second contention. The use of the name "Surfside 3 MarineMax" was sufficient to put the plaintiffs on notice that they were entering into an agreement with the "MarineMax" corporation. Accordingly, "MarineMax, Inc.," as well as its subsidiaries, are entitled to enforce the "Winter Storage Program" contracts.

Finally, the plaintiffs contend that the exculpatory language of the "Winter Storage Program" agreement is ambiguous and invalid as it fails to state in unequivocal terms the intention of the parties to relieve the defendants of their own negligence.

As pointed out by the defendants, the New York Appellate Division, Second Department upheld nearly identical language and granted summary judgment in favor of the defendant marina where the plaintiff's boat was damaged during a severe winter storm. *Futterman v. West Shore Marina, Inc.*, 286 A.D.2d 367, 729 N.Y.S.2d 180 (2d Dep't 2001). However, in *Futterman*, the exculpatory clauses made clear that it was the plaintiff's responsibility to ensure the safety of his boat during a storm. *Id.* at 368, 729 N.Y.S. 2d 180 ("The plaintiff failed to take any action, as he was required to do under the contract, to secure the boat against damage from a windstorm."). This case presents a different situation in that the cause of damage to the plaintiffs' boats were not the result of an external force, but, according to the allegations in the complaint, could have resulted from

the marina's own negligence. Accordingly, the Court must consider whether damage caused by the defendants' own negligence was within the scope of ¶ 3.

"When there is no contravening public policy, an exculpatory provision in a contract, disclaiming one of the party's liability for its own negligence, though disfavored by New York law and closely scrutinized by courts, is generally enforced." *Blue Water*, 239 F. Supp. 2d at 321. "Where the exculpatory agreement states in unequivocal terms the intention of the parties to relieve a defendant of her liability for negligence, the agreement will be enforced." *Id.*

In *Blue Water*, this Court found an exculpatory clause stating, in part, "Licensee expressly acknowledges that Licensor shall not be liable . . . for any loss, injury of damage to Licensee's boat . . . irrespective of how the same is caused, unless the same results from Licensor's willful misconduct or gross negligence . . . ." to be ineffective in absolving the defendant marina from damage caused to the plaintiff's vessel during a fire at the marina's indoor storage facility. *Id.* This Court determined that (1) the disclaimer did not expressly relieve the defendant marina from its own negligence; (2) the disclaimer did not contain the word "negligence" or contain language with similar import, such as "caused by its own fault" or "fails to use reasonable care;" (3) the licensees entering into these agreement may not be sophisticated businessman, requiring the marina to state

precisely and in plain language any disclaimer of negligence claims; and (4) the ambiguities in the contract must be construed against the drafter. *Id.* at 321–22.

In denying reconsideration of its decision, this Court subsequently stated that the "sweeping language" contained in the agreement at issue was akin "to that found in agreements that have not been given effect." *Blue Water*, 289 F. Supp. 2d at 342. The Court distinguished *Segale v. Nu Wave Marine, Inc.*, 244 A.D.2d 326, 663 N.Y.S.2d 872 (2d Dep't 1997), where effect was given to an exculpatory clause expressly disclaiming liability relating to fire. The Court noted that the *Blue Water* provision "advises the plaintiffs to obtain [fire] insurance but nowhere does the agreement expressly and unequivocally state that [the marina] is not liable for damage due to fire or for acts of negligence." *Blue Water*, 289 F. Supp. 2d at 342.

Further, in *Sander v. Alexander Richardson Investments*, 334 F.3d 712 (8th Cir. 2003), the plaintiffs' boats were destroyed while moored at the Yacht Club of St. Louis, when another boat caught fire. *Sander*, 334 F.3d at 713. The Yacht Club maintained "slip agreements" with each owner, which contained a disclaimer, stating in part:

> THE LANDLORD DOES NOT CARRY INSURANCE covering the property of the TENANT. THE LANDLORD WILL NOT BE RESPONSIBLE for any injuries or property damage resulting, caused by or growing out of the use of the dock or harbor facilities; that the TENANT RELEASES AND DISCHARGES THE LANDLORD from any and all liability for loss . . . or damages to

> person or property sustained while in or on the facilities of the LANDLORD, including fire, theft, vandalism . . . whether said boat is being parked or hauled by an Agent of the LANDLORD or not.

*Id.* at 714. The district court found that (1) "exculpatory clauses that completely absolve a party from all liability are invalid;" (2) the clause did not clearly and unequivocally release the Yacht Club from liability for its own negligence; and (3) the provision was the product of overreaching because of the unequal bargaining power of the parties. *Id.*

The Eight Circuit addressed two issues on appeal. First, whether the clause at issue was sufficiently clear and unequivocal as to exonerate the Yacht Club from its own negligence, and, second, whether clauses that fully absolve a party from all liability for negligence are enforceable. *Id.* at 715. The court held that the clause "releasing the Yacht Club 'from *any and all* liability for . . . damages to . . . property . . . , including fire' unambiguously released it from liability stemming from its own negligence." *Id.* at 716. The court explained that:

> The slip agreement clearly shifted the risk of loss to the boat owners by requiring the boat owners to fully insure their boats, including hull coverage. The agreement informed the boat owners in capital letters that the marina did not carry insurance that would cover the property of the boat owners. The term 'any and all' used in the exculpatory clause is all-encompassing and leaves little doubt as to the liability from which the boat owners released the Yacht Club. In short, 'all' means all.

*Id.* (internal quotations and citations omitted).

At least one court within this circuit has adopted the view of the *Sander* court. *See Dominici v. Between the Bridges Marina*, 375 F. Supp. 2d 62, 66 (D. Conn. 2005). The Court finds that the damage caused to the plaintiffs' boats by the May 9, 2007 fire falls within the scope of the disclaimer in the "Winter Storage Program" contract.

However, even where the damage at issue falls within the scope of an exculpatory clause, enforceability of the clause will depend on the circumstances surrounding the transaction, namely: (1) the nature of the services covered by the contract; (2) whether the exculpatory clause is being applied in the particular case to intentional, reckless, or grossly negligent behavior, rather than to ordinary negligence; and (3) whether the exculpatory provisions were obtained through overreaching. *Dominici*, 375 F. Supp. 2d at 66. The Court declines to determine enforceability at this juncture as additional factual development of these issues is required. *Id.* at 69–70 ("The public policy concerns with exculpatory clauses are . . . best channeled into a fact-specific examination of whether [the defendant] engaged in overreaching, or gross misconduct."); *see also Sander*, 334 F.3d at 719–20 (reviewing the factual record to determine whether the defendant exerted unequal bargaining power or engaged in overreaching). Accordingly, summary

judgment is premature and the defendants' motion is denied, without prejudice to renewal at a later time.

      **2.**      **As to the General Release and Agreement Executed by Plaintiff Mallette**

Plaintiff Mallette contends that the Release signed in favor of "MARINEMAX OF NEW YORK, INC." is invalid because (1) the MarineMax defendants had notice of his insurer's subrogation claim at the time it obtained the Release, thus rendering the Release ineffective against the insurer; and (2) the Release is the result of fraud because when signing the documents Mallette was lead to believe that the document was simply a *pro forma* sales document, placed in a stack of purchase/sale documents handed to him at the closing, which related only to the purchase of his new boat.

The MarineMax defendants contend that they could not have had notice of the subrogation claims of Mallette's insurer at the time the Release was obtained because the letter from Axis Insurance Company was mailed on the very same day that the Release was executed. Further, the MarineMax defendants contend that it is inexplicable that Mallette understood the benefit accruing to him of the negotiation with MarineMax, yet failed to understand the corresponding duties imposed by him.

The factual circumstances of the negotiation and the events surrounding the signing of the Release raise factual issues that require additional development

of the record in this case. Accordingly, the MarineMax defendants' motion for summary judgment on this ground is denied without prejudice.

B.  *As to the Defendants' Motion to File a Third Party Complaint Against Marinco Electrical Group and Seacoast Distributors LLC*

On November 10, 2008, the MarineMax defendants moved for leave to file a third-party complaint against Marinco Electrical Group and Seacoast Distributors LLC. No objections were filed to this motion and Marinco Electrical Group and Seacoast Distributors LLC filed answers to the third party complaint on December 31, 2008 and January 13, 2009, respectively.

Rule 14(a) governs third-party practice in federal court. The rule states, in relevant part:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 10 days after serving its original answer.

Fed.R.Civ.P. 14(a).

Rule 14(a) was designed "to promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." *Hines v. Citibank, N.A.*, No. 96CV256, 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999) (citing *Gross v. Hanover Ins. Co.*, 138 F.R.D. 53, 54 (S.D.N.Y. 1991)) (other citations omitted). "Timely motions for leave to implead non-

parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Fashion-In-Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.*, No. 97CV340, 1999 WL 500149, *6 (S.D.N.Y. July 15, 1999) (quoting *Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 459 (S.D.N.Y. 1984)). "Although Rule 14(a)'s purpose is to promote judicial economy, . . . the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court." *Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y.1987).

It is well-settled that a third-party action, also known as an impleader action, must be dependent on, or derivative of, the main claim. *Bank Of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000). In *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984), the Second Circuit explained that when determining whether impleading a third-party is appropriate, the third-party defendant's liability to the third-party plaintiff must be "dependent upon the outcome of the main claim" or the third-party defendant must be "potentially secondarily liable as a contributor to the defendant." *Id.* (citations omitted).

The traditional grounds for a third-party action are indemnification, contribution, or subrogation. *Int'l Paving Sys. Inc. v. Van-Tulco, Inc.*, 866 F.

Supp. 682, 687 (E.D.N.Y. 1994); *Telecom Intern. America, Ltd. v. AT & T Corp.*, No. 96CV1366, 1999 WL 777954, at *4 (S.D.N.Y. Sept. 30, 1999). Regardless of the type of claim asserted, "[t]he outcome of the third-party claim must be contingent on the outcome of the main claim. . . ." *Nat'l Bank of Canada v. Artex Indus., Inc.*, 627 F. Supp. 610, 613 (S.D.N.Y. 1986).

"Factors relevant to determining whether to grant leave to implead a third party include: (a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would prejudice the plaintiff or the third-party defendant; and (d) whether the proposed third-party complaint states a claim upon which relief can be granted." *Capitol Records, Inc. v. City Hall Records, Inc.*, No. 07CV6488, 2008 WL 2811481, at*3 (S.D.N.Y. July 18, 2008).

The Court finds that the defendants' motion was not the result of undue delay and will not cause prejudice to any party. Accordingly, the MarineMax defendants' motion for leave to file a third party complaint is granted.

### III. CONCLUSION

For the foregoing reasons it is hereby

**ORDERED**, that the MarineMax defendants' motion for partial summary judgment based on the exculpatory clause of the "Winter Storage Program" contracts is denied without prejudice; and it is further

**ORDERED**, that the MarineMax defendants' motion for summary judgment against plaintiff Mallette based on the General Release and Agreement is denied without prejudice; and it is further

**ORDERED**, that the MarineMax defendants' motion for leave to file a Third Party Complaint is granted.

**SO ORDERED.**

Dated: Central Islip, New York
September 17, 2009

                 */s/ Arthur D. Spatt*
                 ARTHUR D. SPATT
                 United States District Judge